## Alfred J. Stone et al. vs. William Bradbury.

The word *bond* does not necessarily imply an instrument under seal, or with a penalty, or forfeiture.

Parol evidence is admissible to show, that in a certain description of contracts, any instrument in writing is considered a bond by the parties.

This was an action of *assumpsit* on two notes of hand, dated 12th *March*, 1833, each for $125,00, signed by defendant to the plaintiffs, one payable in six months, the other in nine months, both on interest. The report of the case, shows the following proceedings at the trial.

*Elijah P. Pike*, the subscribing witness to the notes, was called and testified, he presumed he saw those notes signed by *William Bradbury*, the defendant, and declared that he witnessed them. The notes were then read to the jury. The defendant's counsel then stated, that he did not mean to deny the defendant's handwriting, but intended to say, that he did not give them as notes of hand, but left them as escrows with Mr. *Pike* ; and that the contingency never occurred, and they were delivered up without Mr. *Bradbury's* consent, before the contingency happened, and were without consideration. To sustain this defence, the defendant's counsel then proceeded in his cross-examination of said *Pike*, the witness, who further stated, that he received duplicate notices from the defendant's counsel, to produce the original agreement between the parties of the 12th of *March*, 1833, and gave one of them to Mr. *Stone* on the 19th of this month ; that the witness looked for it, but had never seen it since he gave the notes to Mr. *Stone* ; that he never gave it to Mr. *Bradbury* ; that he had a paper indicating on what conditions the notes were to be given up, could not say whether signed by *Stone & Morse* ; *Stone* did the business, Mr. *Morse* was not present ; that the witness did not hear the bargain ; the paper was left with the witness with the notes, witness saw it at his house ; thinks he did not see it since the day he gave the notes to Mr. *Stone*. The paper and notes were left with the witness together. The witness had no distinct recollection of what became of one paper separate from the others, and could not say whether he put them together or not. They were left with the

witness for safe keeping, till a certain contingency was performed; that he had made diligent search and could not find it, and it is lost, so that the witness does not know where it is.

The plaintiffs' counsel objected to any communication of the contents of that written agreement from the witness' recollection, on the ground that the defendant had not proved the loss. But *Emery J.*, who tried the action, overruled the objection. And the witness further testified, that *Stone* was to obtain a bond of Gen. *Veazie* of his real estate at *Oldtown*, including his mills; that *Stone* should obtain a survey and plan of the property, and he should assign one quarter part of the bond to Mr. *Bradbury*, and when he had done that, the witness was to give Mr. *Stone* the notes; that was the substance of the agreement; he thought Mr. *Stone* signed it, and believed that he, *Pike*, did not witness it; that Mr. *Stone* made an assignment on the back of the bond, of one quarter part of his interest in the bond of the real estate and mills in *Oldtown*, to *Bradbury*, subsequent to the 12th of *March*, not a great while after he exhibited a plan and survey. The witness considered it imperfect. *Robert D. Dunning* made a small sketch of it which Mr. *Stone* exhibited to witness. He did not deliver to witness an assignment for the benefit of Mr. *Bradbury*, nor deliver any thing to witness shewing that *Bradbury* was interested in that tract of land, nor notify Mr. *Bradbury* that he was ready to assign it to him to the witness' knowledge. Mr. *Stone* produced Gen. *Veazie's* bond and plan by *Dunning*. Witness considered it imperfect. It was not lotted into house lots. The plan embraced 150 acres, a sketch shewing some house lots on the general sheet, and what belonged to *Veazie*; then the outline of the whole tract. Witness had no recollection that the survey should be made into house lots. Mr. *Stone* took away the bond after the quarter part had been assigned, and witness could not say where it is now. Mr. *Bradbury* never called on witness for the notes, but afterwards asked witness for the memorandum of *Stone*, when the papers were left with witness. The witness testified that he had an interest in the bond; and an assignment was made to witness in the same manner, and he carried it to *Bangor* with the assignment to *Bradbury* on it. It was satisfactory to the witness and he tried to sell it. He afterwards returned it to Col. *Stone*, and had not seen it since; did not recollect

any seal to the assignment; he could not say whether the bond was sealed by Gen. *Veazie;* should think there was no penal sum; it was a memorandum of an agreement, and could not say positively whether under seal; thinks it was signed by Gen. *Veazie;* did not feel confident of its being a bond in usual form. It was without penalty. Witness recollected the price, and that there was no forfeiture. The sum of the purchase was $100,000.

The bond expired between the 20th and 30th of *May,* and the assignment was made within 10 days. *Dunning* went down and made the survey and plan, at *Stone's* request. Witness' impression is, that the agreement had been complied with, and he should not have given up the notes if it had not been. The witness did not recollect that he was in a hurry. Col. *Stone* looked for the memorandum three quarters of an hour. The bond expired after the witness returned from *Bangor,* and nothing was done with it. Mr. *Bradbury* applied to witness sometime before the expiration of the bond, at witness' house, for the memorandum. *Bradbury* was frequently passing there, and *Stone* boarded with witness.

Hereupon the defendant contended, — 1. That said notes were void for want of consideration.— 2. That they were deposited with said witness as escrows to be given up to the plaintiff only on performance of certain conditions precedent, which it was the duty of the plaintiffs to prove clearly had been performed, and that having failed on this evidence to prove performance, they were not entitled to recover. The plaintiffs contended, that having proved the signature of the notes to be the defendant's, they had made out their whole case and were entitled to a verdict; that it was not incumbent on them to show any consideration, the notes being written for value received; that if the defendant would avoid their payment, he must satisfy the jury, and that the burthen of proof was on him to show such matter of defence, and that if they were escrows, that the conditions had not been performed, but the defendant had failed to do so; and that if it was competent for him to prove by parol the contents of any paper not produced, there was abundant evidence to show the terms of any such writing complied with, and the notes properly delivered to the plaintiffs; but that the burthen of proof to show the contrary was altogether on the defendant. The plaintiffs also contended, that the term *bond,* as used by the

parties, did not necessarily import a writing under seal, with a penalty, but must be taken according to the nature of such transactions, which it was well understood did not require such formalities, but such an obligation only was necessary as would compel a performance on the part of *Veazie*, and that this the witness, *Pike*, testified had been produced to him to his satisfaction. And the plaintiffs further contended, that from the testimony of *Pike*, it was not the agreement or intention of the parties, that any separate assignment of said fourth part should be made and delivered to *Bradbury* personally, or to the witness, for said *Bradbury*, but said witness was to be furnished with the evidence that an assignment of said quarter had been made to said *Bradbury*; that said bond from *Veazie* had been obtained, and said plan had been procured, and produced. And he further contended, that from the evidence, the defendant had entirely failed to shew the bond obtained was not under seal, even had that been necessary, the said *Pike* being entirely uncertain on the subject and unable to testify, except negatively, that he had no recollection of any seal, or of any penal sum, and that of this uncertainty the defendant was to suffer the consequence. He also contended, that the expense incurred in obtaining the bond and survey was sufficient consideration for said notes. *Emery J.,* instructed the jury, that the notes purporting to be for value received, and proved to be signed by defendant, it rested on him to satisfy them, that they were given without any consideration ; that the expenses of procuring the bond, survey and plan constituted a sufficient consideration for the notes ; that they were not rendered void merely because no notice was given to *Bradbury*, that a quarter part of the bond was assigned to him, nor was it necessary that the bond or assignment should be delivered to him ; that if the jury were satisfied from the evidence, that the bargain was a fair one, and that the intention of the parties, by the use of the term bond was to show they meant to obtain from *Veazie* an engagement to convey the land, which could be enforced, such an one made in writing and signed by *Veazie* would be sufficient ; inasmuch as it would sustain a suit for damages, or a bill in equity might be supported to compel a specific performance, if the party in whose favor the writing was made performed his part ; the engagement would be good to bind *Veazie* without penalty or forfeiture and without

being under seal; that still, however, if the conditions on which the notes were to be given up to the plaintiffs, were not proved to have been substantially complied with, by the plaintiffs, they were not entitled to recover; that the assignment made by *Stone* to *Bradbury* of a quarter part in the writing of *Veazie*, was sufficient to rest in *Bradbury* an interest to that amount; that if they believed *Pike*, that assignment was proved to have been made on the back of the paper; it would necessarily be known to *Veazie*, on presentation of the bond, that *Bradbury* was so much interested in the matter; it had been carried by *Pike* to *Bangor*, and he had tried to sell the bond; the assignment need not be under seal; that *Pike* was made the agent of the parties, and was satisfied, that the conditions had been complied with, or he should not have given up the notes; that the notes having been made, as a *bonus* for procuring the bond, survey, and plan, to be exhibited by *Stone* to *Pike*, and for the right of being interested one quarter part in the speculation, the subsequent omission of *Bradbury* to carry the contract into effect, by complying in season with the terms of the bond, would not exonerate him from liability to pay the notes, if no fraud, artifice, or deception in relation to the business were practised on him by the plaintiffs, of which, from the evidence, the jury would judge. And if such fraud, artifice, or deception were practised, they would return a verdict for the defendant.

If these instructions were right, the verdict, which was for the plaintiffs, was to stand. If the instructions were erroneous, the verdict was to be set aside, and a new trial granted.

*Codman*, for the defendant, enforced the positions taken at the trial, contended that the instructions of the Judge to the jury were erroneous, and cited the following authorities. *Sumner* v. *Williams*, 8 *Mass. R.* 200; *Page* v. *Trufant*, 2 *Mass. R.* 159; *Hatch* v. *Hatch*, 9 *Mass. R.* 307; *Maynard* v. *Maynard*, 10 *Mass. R.* 456; *Appleton* v. *Crowninshield*, 3 *Mass. R.* 443; *Johnson* v. *Reed*, 9 *Mass. R.* 78; *Newcomb* v. *Brackett*, 16 *Mass. R.* 161; *Willington* v. *West Boylston*, 4 *Pick.* 101; *Chitty on Con.* 274; *Wheelwright* v. *Wheelwright*, 2 *Mass. R.* 447; *Marine Ins. Co.* v. *Hodgson*, 6 *Cranch*, 219.

*Fessenden & Deblois*, for the plaintiffs, argued in support of the several grounds taken by them at the trial, and cited *Thatcher* v.

*Dinsmore,* 5 *Mass. R.* 299 ; *Jerome* v. *Whitney,* 7 *Johns. R.* 321 ; *Jackson* v. *Alexander,* 3 *Johns. R.* 481 ; *Hanson* v. *Stetson,* 5 *Pick.* 506 ; *Talman* v. *Gibson,* 1 *Hall's R.* 308 ; *Sumner* v. *Williams,* 8 *Mass. R.* 214 ; *Fowle* v. *Bigelow,* 10 *Mass. R.* 379 ; *Hopkins* v. *Young,* 11 *Mass. R.* 302 ; *Walker* v. *Webber,* not yet published, (3 *Fairf.* 60) ; *Davis* v. *Boardman,* 12 *Mass. R.* 80 ; *Eastman* v. *Wright,* 6 *Pick.* 316 ; *Ensign* v. *Kellogg,* 4 *Pick.* 1 ; *Cutts* v. *Perkins,* 12 *Mass. R.* 206 ; *Amherst Academy,* v. *Cowls,* 6 *Pick.* 427 ; *Forster* v. *Fuller,* 6 *Mass. R.* 58 ; and *Dunn* v. *Snell,* 15 *Mass. R.* 481.

After a continuance, for advisement, the opinion of the Court was drawn up by

EMERY J. — This is one of those cases with which, there is a prospect, we may be frequently occupied, in consequence of the late very extensive speculation in land. It would hardly do to denounce them at once as a species of gambling transactions ; though the infatuation in some instances appears but little short of what seems to have its influence over the minds of those, who have entered into a course of gaming. In this case the jury have found that there was no fraud, artifice, or deception, in relation to the business, practised on the defendant by the plaintiffs. The acknowledged worth of the defendant, protects him from imputation. Between deserving citizens, differing in opinion as to their rights, we are now called on to decide.

The defendant gave to the plaintiffs the two notes of hand in suit for $125 each, dated *March* 12, 1833, payable with interest, one in 6 months, the other in 9 months, as a bonus for the privilege or right of buying a quarter part of the real estate of *General Vezie,* at *Oldtown,* at the price of $100,000 for the whole, within a certain period, or of selling a bond or contract for it. The plaintiff, *Stone,* was to obtain a bond, a survey and plan of the property, and assign one quarter part of the bond to Mr. *Bradbury,* the defendant ; and when he had done that, the witness, with whom the notes were left for safe keeping, till that contingency was performed, was to give Mr. *Stone* the notes. They were left with the witness to be so delivered, because Mr. *Bradbury* might not be at *Brunswick* when Mr. *Stone* should obtain the bond, survey and plan.

Not a great while after, *Stone* produced Gen. *Veazie's* bond, and a plan by *Dunning* to the witness, who considered it imperfect, as not being lotted into house lots. The plan and survey embraced 150 acres, with a sketch showing some house lots on the general street and what belonged to *Veazie*, and the outline of the whole tract. It was not in the witness' recollection, that the survey should be into house lots. He stated, that *Dunning* went down and made the survey and plan at the plaintiff's, *Stone's*, request. The witness' impression was that the agreement had been complied with. Mr. *Stone* made an assignment on the back of the bond of one quarter part of his interest in the bond of the real estate and mills in *Oldtown* to *Bradbury*, subsequent to the 12th of *March*, and before the expiration of the time limited in the bond for completing the purchase, which was between the 20th and 30th of *May*. The assignment was made within ten days. The witness testified, that he should not have given up the notes, if the agreement had not been complied with.

Mr. *Stone* took away the bond after the quarter part had been assigned. Mr. *Bradbury* never called on the witness for the notes, but before the expiration of the bond, applied to the witness for the memorandum which had been left with the witness with the notes.

The witness had an interest in the bond, and an assignment was made to him, in the same manner, and he carried it to *Bangor* with the assignment to *Bradbury* on it. It was satisfactory to the witness, and he tried to sell it. The bond expired after the witness returned from *Bangor*. Nothing was done with it, and no complaint has been shown by the defendant as to the faithfulness of *Pike's* exertions to effect a sale.

The defendant has objected that the notes were without consideration; that the assignment was not under seal; nor the contract of *Veazie* a bond. He complains also of the instructions of the Judge to the jury.

A negotiable note expressed to be for value received is a promise for a legal consideration, although as between the original parties, the promissor may shew that there was no value received.

But on the evidence in this case, a valuable consideration is proved, in the services of the plaintiff, *Stone*, in obtaining the bond, the survey, and plan, and in the assignment of the quarter part of

the plaintiff's, *Stone's*, interest therein to the defendant. *Eastman et al.* v. *Wright et al.* 6 *Pick.* 316, and cases there cited. 15 *Mass. R.* 481, *Dunn* v. *Snell*.

The jury have decided, that the conditions on which the notes were to be given up to the plaintiffs, were proved to have been substantially complied with by the plaintiffs, and that the bargain was a fair one.

It has been strenuously urged that the Judge erred in his direction, that if the jury were satisfied from the evidence that the intention of the parties, by the use of the term bond, was to show they meant to obtain from *Veazie* an engagement to convey the land, which could be enforced, because it was a question of law, and should have been determined by the Court.

In the case *Fowle* v. *Bigelow*, 10 *Mass. R.* 379, in 1813, cited by the plaintiffs' counsel, Judge *Sewall* observed, that the construction of written instruments is with the Court, and even when extraneous evidence is admissible to aid the construction, as it may be in some cases, so far as to ascertain the circumstances under which the writing was made, and the subject matter to be regulated by it, yet the Court is to direct the effect of that evidence, and what shall be the construction, if certain facts be proved.

In that case, the jury, it was said, was left too much at large. The trial was had before the late Chief Justice *Parker*, before his advancement to the office of Chief Justice. He had instructed the jury, that, the meaning of the parties in the memorandum, being uncertain from the words used, and it being out of his power to ascertain their meaning by reference to the body of the instrument, evidence of the facts and doings of the parties contemporaneously with and immediately subsequent to the execution of the instrument, was proper for their consideration ; and if by these they were satisfied, that in the understanding of the parties, only a temporary maintenance of the gate was intended, until they should agree upon a time to take it down, their verdict ought to be for the defendant, otherwise for the plaintiff. One of the grounds of the motion for a new trial was, that the jury ought to have been permitted to judge of the construction of the instrument.

A new trial was granted because the written evidence, and the facts proved for the defendant, of which the evidence was properly

admitted at the trial, lead to an opposite conclusion from that which the jury have drawn, and their error is in a matter of law, the construction of the written agreement in which they are to be directed by the opinion of the Court. It is fairly inferable from this decision, that if the jury had drawn the right conclusion, no new trial would have been granted.

It is to be recollected that in the present action, the witness, *Pike,* calls the instrument a bond over and over again; he could not say whether it was sealed by General *Veazie;* should think there was no penal sum; a memorandum of agreement; could not say positively whether under seal; thinks it was signed by General *Veazie;* did not feel confident of its being a bond in usual form; it was without penalty; witness recollected the price, and no forfeiture; the sum of the purchase was $100,000; and he tells when the bond expired.

The terms *bind, bound, binding effect, obligation,* are used often by the most respectable jurists without meaning to have them applied to *bond,* in the technical language of the law.

A case decided in the Supreme Court of the *United States* in 1821, reported in 6 *Wheat.* 572, *Union Bank* v. *Hyde,* is an instance. The case turned upon the construction of a written instrument. " I do request that hereafter any notes that may fall due in " the *Union Bank,* on which I am or may be indorser, shall not " be protested, as I will consider myself *bound* in the same manner " as if the said notes had been or should be legally protested. *"Thomas Hyde."* Two constructions were contended for, one literal, formal, vernacular, the other resting on the spirit and meaning, as a mercantile transaction. The Court speak of the nullity of a protest on the *legal obligations* of the parties to an inland bill, and ask, " what are we to understand him to intend, when he says, I will consider myself *bound* in the same manner as if said notes had been or should be legally protested. Except as to foreign bills, a protest has no *legal binding effect.* What effect is to be given to the word *bound?* It must be to pay the debt, or it means nothing. But to cast on the indorser of a foreign bill, *an obligation* to take it up, protest alone is not sufficient. He is still entitled to a reasonable notice in addition to the technical notice communicated in the protest. To *bind him* to pay the debt, all these incidents were in-

dispensable, and may therefore be well supposed to have been in contemplation of the parties when entering into this contract. In that case the evidence proved, that by the understanding of both parties, this writing did dispense with demand and refusal. The company discontinued putting the notes indorsed by the defendant in the usual course for rendering his assumption absolute, and the defendant continued to renew his indorsements without ever requiring demand or notice." The admission of the parol evidence to explain the ambiguity, was thus sanctioned. If such language may be used in our highest judicial tribunal, in application to an instrument not in truth a technical bond under seal, it is not surprising that some latitude should be indulged in, between one, as the plaintiff, *Stone,* is not a professional man, and one who is of the legal profession, as the defendant is, about a contract to convey land.

In 2 *Bingham, N. C.* 668, *Powell* v. *Horton,* in 29 *Eng. Com. Law R.* 452, a contract to sell mess pork of *Scott & Co.,* was held to mean mess pork *manufactured by Scott & Co.,* and also that evidence was admissible to shew what meaning that language bore in market.

*Tindall* Chief Justice, observes, that "in all mercantile contracts on which doubts arise, it is usual to call persons conversant with the trade to state what is understood by the disputed expression." *Park* Justice, says, "assuming that there is an ambiguity, and it was proper to receive evidence as to the acceptation of such terms in the market, the defendant's counsel, by objecting to the admissibility of such evidence, and rejecting the construction put on the contract by the Judge, refuses in effect the decision of both Judge and jury."

In the equivocal description of the instrument executed by *Veazie,* and the avowed satisfaction with it by the witness, who dealt in the land trade, we do not perceive any error in the Judge in placing the matter, as he did, before the jury, as he did give them decided direction, that the instrument, whether sealed or not, if in writing, containing an engagement to convey the land, would be sufficient without penalty or forfeiture.

We do not perceive that the jury have drawn a wrong conclusion, and there must be judgment on the verdict.